CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

AUG 0 9 2007

JOHN F CORCORAN, CLERK
BY: K Dotson
DEPUTY CLERK

| | |
|---|---|
| S.I., a minor, by his mother and next friend, L.I. | ) ) ) |
| - and - | ) ) |
| L.I. | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No.: 5:07CV00083 |
| FISHBURNE-HUDGINS EDUCATIONAL FOUNDATION, INC. d/b/a FISHBURNE MILITARY SCHOOL | ) ) ) ) |
| - and - | ) ) |
| R.M. | ) ) |
| - and - | ) ) |
| DAVID K. WIGGINS | ) ) |
| Defendants. | ) ) |

## COMPLAINT AND JURY DEMAND

Plaintiff S.I., a minor, by and through his mother and next friend, L.I., and Plaintiff L.I.,

in her individual capacity, state as follows for their Complaint against Defendants Fishburne-

Hudgins Educational Foundation, Inc. (d/b/a Fishburne Military School), R.M., and David K.

Wiggins.  This is an action for damages arising out of the sadistic sexual assault and rape of S.I.

by R.M.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(1) (2007), insofar as each Plaintiff is a citizen of a different state than each Defendant, and the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

2.     This Court has personal jurisdiction over Defendants R.M. and Wiggins, insofar as they are residents of the Commonwealth of Virginia.  This Court has personal jurisdiction over Defendant Fishburne-Hudgins Educational Foundation, Inc., insofar as its principal place of business is located in the Commonwealth of Virginia.

3.     Venue in this action properly lies in this Court pursuant to 28 U.S.C. § 1391(a)(1) (2007), insofar as Defendant Fishburne-Hudgins Educational Foundation, Inc. is located in Waynesboro, Virginia, and Defendants R.M. and Wiggins are both residents of the Commonwealth of Virginia; and pursuant to 28 U.S.C. § 1391(a)(2) (2007), insofar as the events giving rise to Plaintiffs' claims occurred in Waynesboro, Virginia.

## THE PARTIES

4.     S.I. is a male, minor resident of the State of Connecticut.  Plaintiff S.I. was, at all relevant times, a boarding student at Fishburne Military School.

5.     L.I. is an adult resident of the State of Connecticut, and is the mother of S.I.

6.     Fishburne-Hudgins Educational Foundation, Inc. is a non-stock corporation organized under the laws of the Commonwealth of Virginia, and is the owner and operator of Fishburne Military School.  Under the doctrine of *respondeat superior*, Fishburne-Hudgins Educational Foundation, Inc. is legally responsible for the acts of Defendants R.M. and

- 2 -

Wiggins that were committed within the scope of their employment and/or agency with Fishburne Military School.

      7.    R.M. is a male, minor resident of the Commonwealth of Virginia. Defendant R.M. was, at all relevant times, a Cadet Non-Commissioned Officer at Fishburne Military School, and was, at all relevant times, acting within the scope of his agency with Fishburne Military School.  Defendant R.M. is, upon information and belief, currently incarcerated in a juvenile facility in the Commonwealth of Virginia.

      8.    David K. Wiggins is an adult resident of the Commonwealth of Virginia. Defendant Wiggins is and was, at all relevant times, the Commandant of Cadets at Fishburne Military School, and was, at all relevant times, acting within the scope of his employment by, and agency with, Fishburne Military School.

## FACTUAL BACKGROUND

      9.    Fishburne Military School is a private, all-boys boarding school for grades eight through twelve located in Waynesboro, Virginia.  Students at Fishburne Military School are referred to as Cadets, and the student body is referred to collectively as the Corps of Cadets ("Corps").

      10.    In August 2006, S.I. enrolled in the ninth grade at Fishburne Military School for the 2006-2007 school year.  S.I. was, at all relevant times, 14-years-old.

      11.    The Corps is supervised by the Commandant of Cadets ("Commandant"). The Commandant is an adult employee of Fishburne Military School, and is responsible for publishing the *Regulations for the Corps of Cadets of Fishburne Military School* ("FMS Regulations") and disciplining those Cadets who violate the FMS Regulations.

12.     David K. Wiggins ("Commandant Wiggins") is and was, at all relevant times, the Commandant of Cadets.

13.     The Commandant delegates his authority to enforce the FMS Regulations—and to supervise and discipline the Corps—to Cadets within the Corps by appointing them to positions as Cadet Officers and Cadet Non-Commissioned Officers ("NCOs").

14.     The Corps is organized into three Companies, each Company is divided into Platoons, and each Platoon is divided into Squads.  A hierarchy or "chain of command" exists within the Corps and its Companies, Platoons, and Squads.  The highest ranking Cadet Officer is the Battalion Commander, followed by the Company Commanders, followed by the Platoon Leaders.  Below the Platoon Leaders are the Cadet NCOs, which, in order of rank, are the First Sergeants, Platoon Sergeants, and Squad Leaders.  The lowest rank within the Corps is the Private.

15.     The FMS Regulations authorize Cadet Officers and Cadet NCOs to give orders to any Cadet junior to them in rank.  The FMS Regulations also require junior Cadets to obey orders given to them by higher ranking Cadets.

16.     Cadet Officers and Cadet NCOs are authorized to enforce the FMS Regulations and discipline junior Cadets with physical punishments such as push-ups, marching, and running.

17.     At all relevant times S.I. held the rank of Private, and was assigned to Alpha Company.

18.     At all relevant times R.M. held the rank of Platoon Sergeant, and was assigned to Alpha Company.  R.M. was, at all relevant times, 16-years-old.

- 4 -

19.    R.M. was appointed to the position of Platoon Sergeant by Commandant Wiggins.

20.    As a Platoon Sergeant in Alpha Company, R.M. occupied a position of authority over S.I.

21.    The FMS Regulations require Cadets to keep their barracks room clean and orderly at all times.  Cadet Officers and Cadet NCOs have the authority and responsibility to enforce that regulation, and are authorized by the FMS Regulations to enter a lower ranking Cadet's room at any time in order to conduct room inspections.

22.    In September 2006, S.I. had allegedly been failing to keep his room clean and orderly.  As a result, Cadet Officers and Cadet NCOs were frequently entering his room to conduct inspections.

23.    On or about the evening of September 11, 2006, S.I. was alone in his barracks room when R.M. entered.

24.    R.M. was able to enter S.I.'s room because of R.M.'s position as an Alpha Company Platoon Sergeant.

25.    R.M. ordered S.I. to change into his physical training uniform.  S.I. followed the order and then stood at attention to await further instructions from R.M.

26.    R.M. then ordered S.I. to "assume the position."  S.I. got on the ground and assumed a push-up position.

27.    R.M. told S.I. "not *that* position," and then told him "assume the position and drop your pants."

28.   At this point S.I. realized that R.M. was ordering him to get down on his knees and place his hands on the bed.  S.I. knew this because he had previously witnessed R.M. order another Cadet into that position.

29.   S.I. told R.M. that he did not want to follow the order.

30.   R.M. told S.I. "assume the position or you will be in pain."

31.   Out of fear of R.M., S.I. got on his knees and placed his hands on the bed.

32.   R.M. then told S.I. to pull his pants down.  S.I. refused, and R.M. responded by pushing on pressure points in S.I.'s body in order to cause pain to S.I.  S.I. continued to refuse to pull down his pants, and R.M. continued pushing on S.I.'s pressure points until S.I., unable to withstand the pain any longer, pulled his pants down to his knees.

33.   R.M. then produced a condom, and removed the condom from its wrapper.  R.M. took a mop from S.I.'s closet and unrolled the condom onto the mopstick.

34.   R.M. then inserted the mopstick into S.I.'s anus.

35.   S.I. told R.M. "don't do that."  R.M. replied that he was going to, and there was nothing S.I. could do about it.

36.   R.M. then proceeded to push and pull the mopstick in and out of S.I.'s anus.

37.   After R.M. had finished sodomizing S.I. with the mopstick, R.M. removed the condom, threw it in the trashcan, and left S.I.'s room.

38.   On or about the evening of September 25, 2006, S.I. was again alone in his barracks room when R.M. entered.

39.   R.M. was able to enter S.I.'s room because of R.M.'s position as an Alpha Company Platoon Sergeant.

40.     R.M. ordered S.I. to change into his physical training uniform.  S.I. complied with the order and changed clothes.

41.     R.M. then ordered S.I. to "assume the position."  S.I. refused, and R.M. responded by pushing S.I. onto the bed and pulling S.I.'s pants around his ankles.

42.     R.M. then told S.I., who was lying on his back, to bring his knees up to his shoulders.  S.I. refused, and R.M. responded by punching S.I. in the stomach.  The blow caused S.I. to bring his knees up to his shoulders involuntarily.

43.     R.M. then smeared hand lotion on S.I.'s buttocks and inserted his penis into S.I.'s anus.

44.     S.I. used his legs to try to push R.M. off of him.  R.M. responded by punching S.I. in the stomach a second time.

45.     R.M. then proceeded to slide his penis in and out of S.I.'s anus.

46.     S.I. again used his legs to try to push R.M. off of him.

47.     R.M. responded by punching S.I. in the stomach a third time.  R.M. also slapped S.I. in the face with the back of his hand, causing S.I.'s lip to split open.

48.     R.M. then ejaculated inside of S.I.'s rectum.

49.     After he ejaculated, R.M. removed his penis from S.I.'s anus, dropped S.I.'s legs, and ordered S.I. to pull up his pants.

50.     S.I. was, at this point, sobbing.  R.M. told S.I. that S.I. was "weak," and left the room.

51.     On October 1, 2006, S.I. reported the September 25, 2006 incident to another Cadet who was senior in rank to both S.I. and R.M.

52.     On October 1, 2006, the aforementioned senior Cadet reported the September 25, 2006 incident to Commandant Wiggins.

53.     On October 2, 2006, S.I. met with Susan Johnson, Assistant Superintendent of Fishburne Military School.  S.I. gave Ms. Johnson a written statement describing the September 25, 2006 incident with R.M.

54.     Ms. Johnson then met with R.M. and read S.I.'s statement to him.  Ms. Johnson asked R.M. if what the statement described was true.  R.M. replied, "yes, pretty much."

55.     On October 2, 2006, Ms. Johnson also contacted L.I. and notified her that S.I. reported he was the victim of a sexual assault.

56.     Ms. Johnson recommended to L.I. that the investigation be kept internal to Fishburne Military School and not be reported to any law enforcement agency.

57.     Neither Ms. Johnson, nor any other person at Fishburne Military School, reported either the September 11, 2006 or the September 25, 2006 incidents to any local, state, or federal law enforcement agency.

58.     On October 2, 2006, L.I. drove from her home in Connecticut to Waynesboro, Virginia.

59.     On October 3, 2006, L.I. took S.I. to the Waynesboro Police Department, where he filed a report regarding the September 11, 2006 and September 25, 2006 incidents.

60.     Immediately after S.I. gave his statement to the police, L.I. took him to the Augusta Medical Center in Fisherville, Virginia, where doctors performed a Gen-Probe of S.I.'s rectum in order to test for any diseases that R.M. may have transmitted to him.

61.     In October 2006, L.I. withdrew S.I. from Fishburne Military School.

62.     Shortly after returning to his home in Connecticut, S.I. began experiencing

angry and emotional outbursts.  S.I. received counseling from a therapist at the local Youth and Family Services Bureau, to help him cope with the trauma caused by the September 11, 2006 and September 25, 2006 incidents at Fishburne Military School.

63.     The therapist observed that S.I. was demonstrating symptoms of Post-Traumatic Stress Disorder.  Believing that she lacked sufficient expertise to deal with S.I.'s trauma, the therapist referred him to a specialist in dealing with children who have been victims of sexual assault.

64.     Criminal charges were brought against R.M. as a result of S.I.'s statement to the police.  In December 2006, R.M. pled guilty to forcible inanimate object sexual penetration and forcible sodomy of S.I.

### COUNT I
### Assault and Battery
### (S.I. Against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc.)

65.     Paragraphs 1-64 are incorporated by reference as though fully set forth herein.

66.     This Count is brought by Plaintiff S.I., by and through his mother and next friend, L.I., against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc.

67.     On September 11, 2006, R.M. used his position of authority as an Alpha Company Platoon Sergeant to enter S.I.'s room.  Once inside S.I.'s room, R.M. told him to "assume the position" and drop his pants or else S.I. "would be in pain."  When S.I. refused, R.M. used pressure points in S.I.'s body to cause him pain and force him to pull down his pants. R.M. then inserted a mopstick into S.I.'s anus.

68.     On September 25, 2006, R.M. used his position of authority as an Alpha Company Platoon Sergeant to enter S.I.'s room.  Once inside S.I.'s room, R.M. told him to "assume the position."  When S.I. refused, R.M. pushed him onto the bed and forcibly pulled down S.I.'s pants.  R.M. told S.I. to lift his knees up to his shoulders.  When S.I. refused, R.M. repeatedly struck S.I. in the stomach and face.  R.M. then subjected S.I. to forced anal intercourse.

69.     R.M.'s words and actions put S.I. in reasonable fear of imminent physical injury.

70.     R.M.'s threatening and touching of S.I. were intentional.

71.     R.M.'s touching of S.I. was done for the malicious and sadistic purpose of humiliating and degrading S.I.

72.     At no time did S.I. consent to being touched by R.M.

73.     R.M. was, at all relevant times during his assault and battery of S.I., acting within the scope of his authority and agency as a Cadet NCO of Fishburne Military School.

74.     As a direct and proximate result of R.M.'s assault and battery, S.I. suffered physical injuries and also suffered, and will continue to suffer, extreme mental distress, anguish, and trauma, and will require future medical and/or psychological care.

WHEREFORE, Plaintiff S.I. demands judgment against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc., jointly and severally, as follows:

(1)     For compensatory damages in the amount of not less than $2,000,000.00, which amount shall be proven at trial;

(2)     For punitive damages against Defendant R.M., individually, in the amount of not less than $350,000.00;

(3)     For costs and expenses associated with this suit; and

(4)     For such other and further relief as this Court deems appropriate.

## COUNT II
### Negligence
### (S.I. Against All Defendants)

75.     Paragraphs 1-74 are incorporated by reference as though fully set forth herein.

76.     This Count is brought by Plaintiff S.I., by and through his mother and next friend, L.I., against Defendants R.M., Wiggins, and Fishburne-Hudgins Educational Foundation, Inc.

77.     Defendant R.M., as a Cadet NCO at Fishburne Military School, occupied a position of authority and power over S.I. and had duty of ordinary care to keep S.I. safe from bodily and mental injury.

78.     R.M. breached that duty when, on September 11, 2006 and September 25, 2006, he used threats and physical violence to forcibly sodomize and rape S.I.

79.     R.M. was, at all relevant times, acting within the scope of his authority and agency as a Cadet NCO of Fishburne Military School.

80.     As a direct and proximate result of R.M.'s negligence, S.I. suffered physical injuries and also suffered, and will continue to suffer, extreme mental distress, anguish, and trauma, and will require future medical and/or psychological care.

81.     Defendant Wiggins, as Commandant of the Corps of Cadets, had duty of ordinary care to keep the Cadets at Fishburne Military School—including S.I.—safe from bodily and mental injury.

82.     Wiggins had the authority and responsibility to appoint Cadet Officers and Cadet NCOs.

83.     The FMS Regulations state that the Commandant may only appoint Cadets who possess the "emotional maturity required for the position" to positions as Cadet Officers and Cadet NCOs.

84.     Wiggins was negligent and breached his duty of care to S.I. when he appointed R.M.—a severely emotionally disturbed individual—to a Cadet NCO position.

85.     Wiggins was, at all relevant times, acting within the scope of his authority, agency, and employment by and with Fishburne Military School.

86.     As a direct and proximate result of Wiggin's negligence, S.I. suffered physical injuries and also suffered, and will continue to suffer, extreme mental distress, anguish, and trauma, and will require future medical and/or psychological care.

WHEREFORE, Plaintiff S.I. demands judgment against Defendants, jointly and severally, as follows:

(1)     For compensatory damages in the amount of not less than $2,000,000.00, which amount shall be proven at trial;

(2)     For costs and expenses associated with this suit; and

(3)     For such other and further relief as this Court deems appropriate.

## COUNT III
## Willful and Wanton Conduct
### (S.I. Against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc.)

87.     Paragraphs 1-86 are incorporated by reference as though fully set forth herein.

88.     This Count is brought by Plaintiff S.I., by and through his mother and next friend, L.I., against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc.

89.     Defendant R.M.'s heinous conduct, as described herein, was so reckless as to evince a conscious disregard and/or indifference for S.I.'s safety.

90.     R.M. was, at all relevant times, acting within the scope of his authority and agency as a Cadet NCO of Fishburne Military School.

91.     As a direct and proximate result of R.M.'s willful and wanton conduct, S.I. suffered physical injuries and also suffered, and will continue to suffer, extreme mental distress, anguish, and trauma, and will require future medical and/or psychological care.

WHEREFORE, Plaintiff S.I. demands judgment against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc., jointly and severally, as follows:

(1)     For compensatory damages in the amount of not less than $2,000,000.00, which amount shall be proven at trial;

(2)     For punitive damages against Defendant R.M., individually, in the amount of not less than $350,000.00;

(3)     For costs and expenses associated with this suit; and

(4)     For such other and further relief as this Court deems appropriate.

## COUNT IV
### Intentional Infliction of Emotional Distress
### (S.I. Against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc.)

92.     Paragraphs 1-91 are incorporated by reference as though fully set forth herein.

93.     This Count is brought by Plaintiff S.I., by and through his mother and next friend, L.I., against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc.

94.     Defendant R.M. committed the above described acts intentionally and for the sadistic purpose of humiliating and degrading S.I.

95.     R.M.'s above described acts were so outrageous in character and extreme in degree so as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

96.     R.M. was, at all relevant times, acting within the scope of his authority and agency as a Cadet NCO of Fishburne Military School.

97.     As a direct and proximate result of R.M.'s aforementioned conduct, S.I. suffered, and will continue to suffer, extreme mental distress, anguish, and trauma, and will require future medical and/or psychological care.

WHEREFORE, Plaintiff S.I. demands judgment against Defendants R.M. and Fishburne-Hudgins Educational Foundation, Inc., jointly and severally, as follows:

(1)     For compensatory damages in the amount of not less than $2,000,000.00, which amount shall be proven at trial;

(2)     For punitive damages against Defendant R.M., individually, in the amount of not less than $350,000.00;

(3)     For costs and expenses associated with this suit; and

(4)     For such other and further relief as this Court deems appropriate.

## COUNT V
### Medical Expenses
### (L.I. Against All Defendants)

98.     Paragraphs 1-97 are incorporated by reference as though fully set forth herein.

99.     This Count is brought by Plaintiff L.I., in her individual capacity, against

- 14 -

all Defendants.

100.    As a direct and proximate result of Defendants' tortious conduct, L.I.

incurred, and will continue to incur in the future, expenses to obtain treatment for S.I.'s

aforementioned physical, mental, and emotional injuries.

101.    To the extent that Defendants are found to be liable to S.I., they are also

liable to L.I., under Va. Code Ann. § 8.01-36 (2007), for the expenses of curing or attempting to

cure S.I. of his injuries.

WHEREFORE, Plaintiff L.I. demands judgment against Defendants, jointly and

severally, as follows:

(1)    For compensatory damages in the amount of not less than $100,000.00,

which amount shall be proven at trial;

(2)    For costs and expenses associated with this suit; and

(3)    For such other and further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury with respect to each of the claims alleged herein.

Respectfully submitted,

BODE & GRENIER, LLP

Peter C. Grenier (VSB No. 50997)
Denis M. Delja (VSB No. 65396)
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C.
(202) 862-4311
(202) 862-4130

*Counsel for Plaintiffs*

- 15 -